UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re: ) | |
| ) | |
|    GERALD HENNEGHAN ) | Case No. 05-10550-SSM |
| ) | Chapter 13 |
|           Debtor ) | |
| ) | |
| GERALD HENNEGHAN ) | |
| ) | |
|          Plaintiff ) | |
| ) | |
| vs. ) | Adversary Proceeding No. 05-1222 |
| ) | |
| AT&T WIRELESS SERVICES, INC., *et al.* ) | |
| ) | |
|         Defendants ) | |

**MEMORANDUM OPINION AND ORDER**

A hearing was held in open court on July 19, 2005, on (a) the debtor's motion to amend the complaint and (b) the court's order for the debtor to show cause why this action should not be dismissed.  This is an action by a chapter 13 debtor against two cell-phone service providers, AT&T Wireless Services, Inc. (AT&T) and Cingular Wireless Services, Inc. (Cingular), and a collection agency, Allied Interstate, Inc. (Allied), seeking $2.42 million in compensatory and punitive damages for a variety of alleged torts related to one or more dunning notices sent to the debtor after he filed for bankruptcy.  Subsequent to the filing of the action (1) Allied was dismissed as a defendant after reaching a settlement with the debtor and (2) the underlying chapter 13 case was dismissed with prejudice.  Given the

1

dismissal of the underlying case, the court concludes that the motion to amend the complaint should be denied and that the adversary proceeding should be dismissed.

## Background

The plaintiff, Gerald Henneghan ("the debtor"), filed a voluntary petition in this court on February 17, 2005, for relief under chapter 7 of the Bankruptcy Code. This was his sixth bankruptcy filing since 1998.[1] After the court entered an order for the debtor to show cause why he should not be denied a discharge because he had received a chapter 7 discharge in a prior case filed within six years of the present case and was therefore ineligible to receive a discharge in the newly-filed case, *see* § 727(a)(8), Bankruptcy Code, the debtor moved to convert his case to chapter 13. An order granting the motion was entered on April 7, 2005. After the chapter 13 trustee filed a motion to dismiss the case (because the debtor had no demonstrated regular source of income with which to fund a repayment plan), the debtor filed his own motion to dismiss. The court granted the debtor's motion, and the case was dismissed (with prejudice to refiling for 180 days) on June 9, 2005.

The present action – one of 26 filed by the debtor against various parties since the closing of the 2003 case – was commenced against AT&T, Cingular, and Allied on March 28, 2005. As originally filed, it was pleaded in five counts seeking recovery of $2.42

---

[1] A summary of the debtor's bankruptcy filings is as follows:

| District | Case No. | Filed | Chap | Disposition |
|---|---|---|---|---|
| D DC | 98-02800 | 12/21/1998 | 13 | dismissed with prejudice 3/19/99 |
| D DC | 99-01943 | 09/22/1999 | 13 | dismissed with prejudice 11/22/99 |
| D DC | 00-01568 | 08/22/2000 | 13 | dismissed with prejudice 10/6/00 |
| ED VA | 01-14649 | 12/06/2001 | 7 | converted to 13 1/11/02; dismissed 7/18/02 |
| ED VA | 03-11853 | 04/17/2003 | 13 | converted to 7  5/6/04; discharge issued 9/14/04 |
| ED VA | 05-10550 | 02/17/2005 | 7 | converted to 13 4/7/05; dismissed w/ prejudice 6/9/05 |

million in compensatory and punitive damages on theories of race and sex discrimination (Count 1), retaliatory conduct (Count 2), harassment (Count 3), violation of the automatic stay (Count 4), and violation of public policy (Count 5).  The only specific conduct pleaded in the complaint was the sending of a dunning notice to the debtor by Allied on August 3, 2004, to collect a $2,128.14 bill owed to AT&T.[2]  There is no reference in the complaint to any specific conduct by Cingular or its relation to the other defendants.[3]  After Allied filed a motion to dismiss the complaint, the debtor filed a motion to amend the complaint to increase the number of pleaded counts to twelve: race discrimination (Count 1), sex discrimination (Count 2), place of origin discrimination (Count 3), family status discrimination (Count 4), retaliation (Count 5), discrimination with regard to public accommodation (Count 6), retaliatory conduct while violating the automatic stay (Count 7), retaliatory conduct while violating the discharge injunction (Count 8), harassment (Count 9), violation of the automatic stay (Count 10), violation of the discharge injunction (Count 11), and violation of public policy (Count 12).  In terms of specific conduct, the amended complaint is even less informative than the original complaint, since it refers only to

---

[2] The complaint does not state when the liability was incurred, and specifically, whether it was incurred before or after May 6, 2004, the date the debtor's prior case was converted from chapter 13 to chapter 7.  The court notes that debtor's schedules reflect a $2,600 debt to AT&T which is described as "discharged 9-14-04."  In any event, to the extent the liability was for service provided prior to the conversion, it would have been discharged in the chapter 7 case.

[3] However, in its answer Cingular identifies itself as "New Cingular Wireless Services, Inc., f/k/a AT&T Wireless Services, Inc."  Accordingly, for the purpose of the present ruling, the court will assume that Cingular is the successor to AT&T.

"collection notices" without specifying the identity of the sender, the date sent, or the debt to which any notice related.[4]

## Discussion

The applicable legal principles are discussed in this court's opinion in an action brought by the debtor against another creditor and need not be repeated at length. *Henneghan v. Wachovia Bank, N.A.*, No. 05-10550, A.P. No. 05-1213 (Bankr. E.D. Va., July 25, 2005). Suffice it to note that this court has subject-matter jurisdiction over a debtor's action to recover damages for violation of the automatic stay, as such a claim arises under the Bankruptcy Code. Although there is no private right of action for violation of the discharge injunction, such a violation may be addressed as a contempt of court, which again falls within this court's core jurisdiction, since the right the debtor seeks to enforce arises under the Bankruptcy Code. Additionally, so long as Mr. Henneghan's case remained a chapter 13 case, the various discrimination counts – to the extent they state claims for relief, an issue the court need not resolve – were "related to" the bankruptcy case and thus fell within this court's non-core jurisdiction (with the debtor having standing under § 1303, Bankruptcy Code, to prosecute them on behalf of the bankruptcy estate).

The question is whether core jurisdiction over the claims for violation of the automatic stay and discharge injunction or non-core jurisdiction over the discrimination

---

[4] On June 2, 2005, the debtor filed a motion to withdraw the reference, *see* 28 U.S.C. § 157(d), but never paid the required $150.00 filing fee. It does not appear that the motion was forwarded to the United States District Court for a ruling (presumably because of the failure to pay the filing fee). *See* Fed.R.Bankr.P. 5011(a). In any event, a pending motion for withdrawal of the reference does not stay the administration of the case or any proceeding in the case unless a stay, "on such terms and conditions as are proper," is obtained from the bankruptcy judge or a district judge. Fed.R.Bankr.P. 5011(c).

claims is appropriately exercised once the underlying bankruptcy case is dismissed.  The general rule is that dismissal of the bankruptcy case permits but does not require dismissal of adversary proceedings pending at the time of dismissal.  *Porges v. Gruntal & Co. (In re Porges)*, 44 F.3d 159, 162 (2nd Cir. 1995).  Given that the non-core counts had not progressed beyond the pleading stage, no sound reason exists for the court to retain jurisdiction over them.  Even with respect to the claimed violation of the automatic stay and discharge injunction, there are many factors militating against retention of jurisdiction.  Although the automatic stay is one of the most fundamental bankruptcy protections – not only for the debtor but also for other creditors – not all violations are of equal concern.  As this court observed in *Wachovia Bank*,

> The underlying purpose of the automatic stay, after all, is to maintain the status quo until the interests of the bankruptcy estate, the debtor, and the party stayed can be sorted out.  Where the alleged stay violation has not actually altered the landscape, it makes little sense, in terms of sound bankruptcy policy, to retain jurisdiction following the debtor's voluntary dismissal of the case.  For example, where a creditor has violated the automatic stay by mailing the debtor a dunning notice, but the notice has not intimidated the debtor into paying the debt or caused the debtor to incur out-of-pocket costs, there is no injunctive relief that could be awarded (because the automatic stay terminated with the dismissal of the case) and any damages would be at best nominal.  Bankruptcy courts have a heavy enough case load as it is, and scarce judicial resources are better expended resolving disputes that will affect the administration of active cases.

Slip. Op. at 5-6.  Here, other than the debtor's annoyance at receiving whatever notices were sent, there is no suggestion of any out-of-pocket losses.

Moreover, the court cannot ignore the context in which the present adversary proceeding arises.  As this court noted in *Wachovia Bank*,

> This debtor has filed a total of 26 nearly-identical adversary proceedings – 11 of them against the same creditor – under the umbrella of this case and the prior chapter 7 case asserting violations of the discharge injunction and the automatic stay. Each action seeks over $2 million in compensatory and punitive damages. The sheer number of suits filed by the debtor and the astronomical damages demanded are redolent of bad faith and suggest an intent to use this court as a forum simply to wage war upon (or extort settlements from) his creditors. Were this the only action (or one of two or three) filed by the debtor, the court might be inclined to retain jurisdiction notwithstanding the relatively small amount of damages likely to be proved. However, the court sees no reason to ignore the obvious and allow its resources to be used (or, more accurately, abused) on behalf of a debtor who, instead of paying his creditors under a repayment plan – which is the intended purpose of chapter 13 – now simply wishes to sue his creditors.

Slip. Op. at 7-8.[5]

## O R D E R

For the foregoing reasons, it is

**ORDERED:**

1. The motion to amend the complaint is denied.

2. This action is dismissed without prejudice to the assertion of the non-core claims in a court of appropriate jurisdiction and without prejudice to the settlement of the plaintiff's claims against defendant Allied Interstate, Inc.

---

[5] In *Wachovia Bank*, the complaint had been amended to remove the discrimination claims, and the only claim was for violation of the automatic stay.

3. The clerk shall mail a copy of this order, or give electronic notice of its entry, to the parties listed below.

Date: _____          _____
                                        Stephen S. Mitchell
Alexandria, Virginia                    United States Bankruptcy Judge

Copies to:

Gerald Henneghan
10102 Parkington Court
Manassas, VA 20109
Plaintiff *pro se*

AT& T Wireless Services, Inc.
c/o CT Corporation Systems
4701 Cox Road, Suite 301
Glen Allen, VA 23060
Defendant

Anitra Denise Goodman, Esquire
Kilpatrick Stockton, LLP
607 14th Street, N.W.
Suite 900
Washington, DC 20005
Counsel for defendant Cingular Wireless Services, Inc.

Tara L. Elgie, Esquire
LeClair Ryan
225 Reinekers Lane, Suite 290
Alexandria, VA 22314
Counsel for defendant Allied Interstate, Inc.